**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*:<br><br>DMK PHARMACEUTICALS CORP *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 24-10153 (MFW)<br><br>(Jointly Administered) |
| DMK PHARMACEUTICALS CORP *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>USWM, LLC,<br><br>Defendant. | Adv. No. 24-50071 (MFW) |

**DEFENDANT USWM, LLC'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS ADVERSARY COMPLAINT**

Dated: October 22, 2024

McCARTER & ENGLISH, LLP

Daniel M. Silver (#4758)
Kate Roggio Buck (#5140)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware 19801
Tel.: (302) 984-6300
dsilver@mccarter.com
kbuck@mccarter.com
bsmyth@mccarter.com

*Counsel for Defendant USWM, LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

I. PLEADING A PLAUSIBLE CONTRACT CLAIM REQUIRES SUFFICIENT FACTUAL INFORMATION SHOWING A CONTRACTUAL OBLIGATION, BREACH, AND RESULTING DAMAGES. ..... 2

II. THE COURT SHOULD DISMISS COUNT I. ..... 3

A. The Complaint Does Not Allege That USWM Breached A Contractual Obligation. ..... 3

B. Count I Fails To State A Viable Claim For Breach, Assuming Arguendo Plaintiffs Have Identified A Breach. ..... 5

1. The Complaint Does Not Address The CRE Definition Or Allege A Plausible Claim That USWM Breached It. ..... 5

2. The Complaint Does Not Address The Safe Harbor Or Allege A Plausible Claim That USWM's Conduct Falls Outside Its Protections. ..... 10

3. The Information Claim Similarly Fails And Must Be Dismissed. ..... 12

III. ASSUMING ARGUENDO ANY CLAIM SURVIVES DISMISSAL, PLAINTIFFS' DAMAGES CLAIMS MUST BE TRIMMED. ..... 12

CONCLUSION ..... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 9

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Cilag GmbH International v. Hospira Worldwide, LLC,*
2022 WL 17475481 (D. Del. Dec. 6, 2022) .......... 14

*Citisteel USA, Inc. v. Gen. Elec. Co.*,
78 F. App'x 832 (3d Cir. 2003) .......... 14

*Connelly v. Lane Construction Corporation,*
809 F.3d 780 (3d Cir. 2016) .......... 2

*In re Cred Inc.*,
658 B.R. 783 (D. Del. 2024) .......... 3

*CrewFacilities.com, LLC v. HotelEngine, Inc.,*
2021 WL 2649758 (D. Del. June 28, 2021) .......... 14

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
328 F.3d 374 (7th Cir. 2003) .......... 4

*Glover v. F.D.I.C.*,
698 F.3d 139 (3d Cir. 2012) .......... 4, 6, 11

*Hydrogen Master Rts., Ltd. v. Weston*,
228 F. Supp. 3d 320 (D. Del. 2017) .......... 12

*Kiger v. Mollenkopf*,
2021 WL 5299581 (D. Del. Nov. 15, 2021) .......... 5, 12, 13

*Omega Cap. Mgmt. Partners, LLC v. Schrage*,
2022 WL 17847192 (3d Cir. Dec. 22, 2022) .......... 3

*Prewett Enters., Inc. v. Grand Trunk W. R.R. Co.*,
2019 WL 6310495 (N.D. Ill. Nov. 25, 2019) .......... 10

*Sierra Est. of Romagosa v. Trafigura Trading LLC*,
2024 WL 4104130 (D. Del. Sept. 6, 2024) ....................9

*Tendyne Holdings, Inc. v. Abbott Vascular, Inc.*,
2019 WL 2717857 (D. Del. June 28, 2019) ....................1, 2, 6

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
836 F.2d 173 (3d Cir. 1988) ....................8

**Other Authorities**

Rule 8(a) ....................4

Rule 12 ....................11

Rule 12(c) ....................14

## **INTRODUCTION**[1]

Plaintiffs fail to engage meaningfully with USWM's request to dismiss Count I of the Complaint.[2] The MOL identified dispositive case law from now-Chief Judge Connolly— *Tendyne Holdings, Inc. v. Abbott Vascular, Inc.*, 2019 WL 2717857 (D. Del. June 28, 2019)—and explained why it dictates dismissal. Rather than distinguishing that case or citing contrary authority, Plaintiffs ignored *Tendyne* and resorted to generic arguments based on the applicable pleading standard. That is not good enough. Thus, for the reasons set forth in the MOL and below, the Complaint must be dismissed.

For context, Plaintiffs capitulated on Count III (Response at 1 n.1), leaving only two issues for the Court to resolve: (1) whether Count I fails to state a plausible contract claim under Delaware law; and (2) whether the Agreement precludes Plaintiffs' overblown damages. If the Court agrees that Count I fails to state a viable claim, it need not reach Plaintiffs' exaggerated damages claims – the action will be dismissed.

For Count I, Plaintiffs contend that: (1) they can plead a plausible claim without proving a *prima facie* case; and (2) the Court can infer wrongdoing based on patchwork allegations from the Complaint. Plaintiffs miss the mark with regard to (1), as the Complaint must allege sufficient factual information showing a contractual obligation, breach, and resulting damages to rise to the level of a plausible claim. As to point (2), Plaintiffs cannot mask their insufficient pleading by asking the Court to sift through the Complaint searching for a plausible claim. Both the Commercialization and Information Claims thus fail.

---

[1] Unless defined in this reply, abbreviations and capitalized terms have the same meanings as in USWM's Memorandum of Law ("**MOL**") (D.I. 15) supporting its motion to dismiss ("**Motion**"). (D.I. 14).

[2] With their response to the Motion ("**Response**") (D.I. 18), Plaintiffs withdrew Count III of the Complaint. (Response at 1 n.1). And Plaintiffs agree with USWM that Count II rises and falls with Count I. (*Id*. at 11).

The heart of Plaintiffs' Complaint—the Commercialization Claim—fails under *Tendyne* and the Safe Harbor. Plaintiffs' silence about *Tendyne* speaks volumes. And while Plaintiffs try sidestepping it, the Safe Harbor prevents the Court from inferring a viable breach claim without factual information addressing, at a minimum, the Sales and Distribution Allocation, which the Complaint omits.

As to damages, Plaintiffs misunderstand and largely fail to address USWM's arguments. For instance, Plaintiffs say nothing as to why they should be able to recover "lost sales" damages exceeding $20 million, which they would not, under any circumstances, be entitled to under the Agreement. The only real damages point Plaintiffs make is that the Court cannot, at this stage, distinguish between direct and consequential damages. While that may be correct in other circumstances, it is not the case here, because Plaintiffs seek "lost market capitalization" damages that do not directly flow from the alleged breach and are thus barred by the Agreement's liability limitation provision. Thus, in the unlikely event that Count I survives, the Court should substantially trim Plaintiffs' damages claims.

## ARGUMENT

### I. PLEADING A PLAUSIBLE CONTRACT CLAIM REQUIRES SUFFICIENT FACTUAL INFORMATION SHOWING A CONTRACTUAL OBLIGATION, BREACH, AND RESULTING DAMAGES.

Plaintiffs rely heavily on *Connelly v. Lane Construction Corporation* (Response at 6), in which the Third Circuit explained that "a complaint need not establish a *prima facie* case" because that "is an evidentiary standard, not a pleading requirement . . . ." 809 F.3d 780, 788-89 (3d Cir. 2016). *Connelly* is both unremarkable and irrelevant to USWM's dismissal arguments.

Indeed, as USWM has explained, the Complaint fails to plead a plausible claim for breach of contract under Delaware law. To plead such a claim, "a plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed

by that contract; and third, the resultant damage to the plaintiff." *Omega Cap. Mgmt. Partners, LLC v. Schrage*, 2022 WL 17847192, at *1 (3d Cir. Dec. 22, 2022) (emphasis added) (explaining what is necessary "[t]o state a claim for breach of contract under Delaware law").

Plaintiffs cannot "demonstrate" those elements without alleging "sufficient factual information" from which the Court can conclude that Plaintiffs' claims are plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The facts alleged must nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *In re Cred Inc.*, 658 B.R. 783, 792 (D. Del. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[I]f a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. And the Court is "not compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007).

## II. THE COURT SHOULD DISMISS COUNT I.

### A. The Complaint Does Not Allege That USWM Breached A Contractual Obligation.

The Court should dismiss the Commercialization and Information Claims because the Complaint does not plead that USWM breached any particular Agreement provision. (MOL at 8, 11). Plaintiffs contend that the Complaint "identified section[s] 4 and 4.1 as the operable commercialization provisions that USWM breached." (Response at 7 n.4 (citations omitted)). Separately, the Response refers to Paragraphs 47, 48, 50, 52, and 53 of the Complaint as "identif[ying]" the "commercial obligations pursuant to the Agreement" that USWM allegedly

breached. (Response at 7). But along with Sections 4 and 4.1, these paragraphs cite Sections 1.63, 2.1, and 6.2.4 of the Agreement.[3]

Thus, at best, the Complaint is unclear as to the provisions USWM allegedly breached, and the Court should dismiss Count I because USWM lacks "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up). Plaintiffs cannot cure this defect by pointing to a laundry list of Complaint paragraphs and Agreement provisions embedded in those paragraphs.

That Plaintiffs could not oppose the Motion without having to piece together allegations from different parts of the Complaint only highlights the problem. "Rule 8(a) requires that a complaint be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim." *Glover v. F.D.I.C.*, 698 F.3d 139, 147 (3d Cir. 2012) (quotations omitted). Put another way, parties must "make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Thus, the Court should dismiss the Complaint based on Plaintiffs' failure to clearly and plainly articulate their claims.

Merely mentioning a provision in the Complaint does not give rise to a plausible inference that USWM breached that provision. The Complaint does <u>not</u> allege that USWM breached Sections 1.63, 2.1, 4, or 6.2.4. Rather, the Complaint cites Sections 1.63, 2.1, and 4 in alleging that USWM had to commercialize ZIMHI® under the Agreement: "Pursuant to the express terms of the Agreement, USWM agreed and was obligated to commercialize ZIMHI . . . . <u>*See* Ex. A, at §§</u>

---

[3] Paragraph 50 of the Complaint does not cite an Agreement provision, and Paragraph 47 cites the Agreement generally. As already discussed, Plaintiffs cannot plead a contract claim without identifying a specific provision that USWM allegedly breached. (*See* MOL at 8, 11).

1.63, 2.1, 4." (Complaint, ¶ 48 (emphasis added)). Likewise, the Complaint cites Section 6.2.4 in discussing reports the Agreement allegedly requires: "Pursuant to the Agreement, USWM also agreed to provide monthly reports to Plaintiffs that include estimates of ZIMHI units sold and net sales for the prior month. *See* Ex. A, at § 6.2.4." (*Id*. ¶ 53 (emphasis added)).[4]

As to Section 4.1, the Complaint alleges only that "USWM was required under the Agreement to provide this Commercialization Plans [sic] to Plaintiffs, but failed to do so." (Complaint, ¶ 52). But the Court must ignore this conclusory allegation for reasons USWM has already explained. (*See* MOL at 11). Plaintiffs did not address this point and have waived their counterarguments. *See Kiger v. Mollenkopf*, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) ("A party that fails to address an argument in its brief in opposition waives that argument.") (cleaned up).

Thus, Plaintiffs' Complaint must be dismissed because Plaintiffs have not identified a specific provision of the Agreement that USWM allegedly breached.

### B. Count I Fails To State A Viable Claim For Breach, Assuming *Arguendo* Plaintiffs Have Identified A Breach.

Even if the Complaint identified allegedly breached Agreement provisions, the Commercialization and Information Claims would still fail. (MOL at 8-12). Plaintiffs' counterarguments are unavailing.

#### 1. *The Complaint Does Not Address The CRE Definition Or Allege A Plausible Claim That USWM Breached It.*

The Commercialization Claim fails because the Complaint ignores Section 1.18 of the Agreement (MOL at 8-9), which defines CRE as "reasonable, diligent, good-faith efforts . . . as

[4] The Complaint does not allege that USWM failed to provide reports under Section 6.2.4.

such Party would normally use to accomplish a similar objective under similar circumstances exercising reasonable business judgment."

Unable to point to well-pleaded facts supporting a viable claim that USWM breached its CRE obligations, Plaintiffs seek to sidestep Section 1.18 by discounting it as "simply the Definition of the term 'Commercially Reasonable Efforts.'" (*See* Response at 7 n.4). This back-of-hand approach is not only baffling—how can the definition of the allegedly breached obligation not matter?—but it contradicts *Tendyne* (*see* MOL at 8-9), in which now-Chief Judge Connolly granted dismissal because, as here, the operative complaint "fail[ed] to address the Agreement's definition of Commercially Reasonable Efforts" and did "not allege any facts from which the Court may plausibly infer that [defendant] violated this standard." *Tendyne*, 2019 WL 2717857, at *2, 3. Thus, as in *Tendyne*, the Court should dismiss the Commercialization Claim.

Aside from *Tendyne*, Plaintiffs' failure to engage with Section 1.18's CRE definition is fatal. For example, if the Agreement hypothetically defined CRE as requiring USWM to spend $10 Million in annual promotion, Plaintiffs would have to allege factual information showing that USWM failed to spend $10 Million in annual promotion. They could not state a plausible claim alleging only that USWM breached the CRE provision without addressing USWM's obligation to spend $10 Million and how USWM failed to meet that obligation (*e.g.*, by only spending $1 Million).

Hedging on their claim that the Agreement's CRE standard has no bearing, Plaintiffs argue that the Court can infer that USWM breached that standard based on cobbled-together allegations from around the Complaint. (Response at 8). But again, Plaintiffs cannot force the Court to "sift through [the Complaint's] pages in search of the nature of [their] claim." *Glover*, 698 F.3d at 147. And even then, the allegations Plaintiffs cite are not sufficient to state a viable claim.

Plaintiffs argue that "[t]he Court can reasonably infer that USWM failed to exercise commercially reasonable efforts for ZIMHI" based on the allegations in Paragraphs 22-24, 28, 36, 43-44, 46, and 55-58 of the Complaint. (Response at 8). Those allegations pertain to: the U.S. naloxone market generally (Complaint, ¶¶ 22, 23, 24); ZIMHI®'s "differentiating qualities" (*id.* ¶ 36) and supposed status as the "only commercially available, FDA-approved intramuscular naloxone product in the United States market" (*id.* ¶ 28); USWM allegedly not meeting budgeted gross sales (*id.* ¶¶ 43, 44), "marketing ZIMHI primarily to addiction clinics, which is a suboptimal market segment" (*id.* ¶ 58),[5] and "conduct[ing] minimal to no pre-marketing activity with respect to ZIMHI" (*id.* ¶ 55); USWM's allegedly inadequate marketing budget (*id.* ¶ 57) and small commercialization team (*id.* ¶ 56); and "[t]he reduction in ZIMHI sales" that "USWM's reduction in the amount it spent on distribution and commercialization efforts in conflict with normal and customary pharmaceutical marketing practices" allegedly caused. (*Id.* ¶ 46). These allegations say nothing about what USWM "normally" does "to accomplish a similar objective under similar circumstances," the Agreement's operative CRE standard. Thus, the Court cannot infer that USWM commercialized ZIMHI® in a manner that did not comply with its CRE obligation.

Plaintiffs argue that allegations about a medication called Lucemyra™ show what USWM "would normally" do "to accomplish a similar objective under similar circumstances" such that the Court can infer that USWM breached the CRE obligation in commercializing ZIMHI®. (Response at 8-9). But the Complaint lacks any factual information from which the Court can infer that USWM's work relating to Lucemyra™ qualifies as "a similar objective under similar circumstances." Without limitation, the Complaint fails to allege that Lucemyra™ is a similar

[5] As already noted, this is a conclusory allegation that the Court need not accept. (MOL at 11). Plaintiffs did not address this point.

product launched under similar circumstances to ZIMHI®. Indeed, there are no allegations about Lucemyra's™ applicable market or even the condition Lucemyra™ treats.

The Response—not the Complaint—claims that Lucemyra™ "is another prescription medication for use in opioid addiction" and that USWM "marketed Lucemyra to the correct target market (addiction centers) while marketing ZIMHI to a suboptimal market . . . ." (Response at 8). Allegations supporting those claims are ***not*** in the Complaint. Thus, the Court should ignore what the Response says because "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quotations omitted).

The allegations actually found in the Complaint about Lucemyra™ do not help Plaintiffs. Those allegations are almost entirely in Paragraph 59, which states that: the ZIMHI® sales team focused on marketing and selling Lucemyra™ and was "incentivized" to sell Lucemyra™ rather than ZIMHI®; and "[t]he sales points for" Lucemyra™ and ZIMHI® "are different, and as a result, USWM's marketing efforts of ZIMHI were not to the correct target market and were only secondary to the USWM's sales force's principal and incentivized goal of selling Lucemyra." As with those discussed above, these allegations provide no factual information from which the Court can infer that USWM commercialized ZIMHI® using efforts differing from what it "would normally use to accomplish a similar objective under similar circumstances." (Agreement, § 1.18). There is simply no factual information in the Complaint from which the Court can infer that Lucemyra™ and ZIMHI® are similar products and that marketing them constitutes "a similar objective" or "similar circumstances."

Paragraph 60 of the Complaint alleges "[u]pon information and belief" that "USWM instructed its employees who were tasked with marketing and selling ZIMHI to instead, focus their

sales efforts on Lucemyra." (Complaint, ¶ 60 (emphasis added)). How this allegation relates to the CRE obligation is unclear. Even so, the Court should <u>not</u> credit this allegation because it is a bald assertion premised on "information and belief" with no "underlying facts that would help render it plausible that this assertion is correct." *Sierra Est. of Romagosa v. Trafigura Trading LLC*, 2024 WL 4104130, at *9 (D. Del. Sept. 6, 2024) (citing *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263 (3d Cir. 2016)) (addressing how allegations based on "information and belief" are handled in the Third Circuit).

Plaintiffs next contend that the Complaint and Exhibits B and C show that Plaintiffs "asked USWM for information about how it commercialized ZIMHI compared to how it commercialized other products, including specifically Lucemyra, and USWM provided virtually no information." (Response at 9). Based on that claim, Plaintiffs argue that: (1) "USWM cannot both withhold information . . . to avoid the discovery of its breach . . . and now argue that DMK's breach of contract claim should be dismissed for failure to plead the very facts that USWM withheld"; and (2) the Court should infer that "USWM's refusal to provide information . . . reflects USWM's failure to" exercise CRE as defined by Section 1.18 "because otherwise USWM would have provided the requested information . . . ." (*Id.*).

These arguments are baseless. For one thing, nothing in the Complaint or its exhibits shows Plaintiffs asking for, or USWM refusing to provide, information about "how [USWM] commercialized ZIMHI <u>compared to how it commercialized other products</u> . . . ." (Response at 9 (emphasis added)). And even if that were not the case, as to (2), "if a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Plaintiffs' final argument here is that the Court should aggregate these individually insufficient allegations and find them sufficient on a collective basis to state a viable claim. (Response at 9). But whether viewed as individual allegations or a collective whole, the Complaint lacks sufficient factual information from which the Court can plausibly infer that USWM breached the CRE obligation defined in Section 1.18 of the Agreement in commercializing ZIMHI®.

**2. *The Complaint Does Not Address The Safe Harbor Or Allege A Plausible Claim That USWM's Conduct Falls Outside Its Protections.***

The Commercialization Claim also fails because the Complaint ignores the Safe Harbor. (MOL at 10). Plaintiffs claim the Safe Harbor is irrelevant because "pleading a breach of contract claim requires only (1) the existence of a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiff . . . ." (Response at 9-10).

But the Safe Harbor's unambiguous language states that "USWM shall not be deemed to be in breach of its Commercial Efforts obligations" if it "actually expends direct costs via the Sales and Distribution Allocation in an amount within twenty percent . . . of the allocation for the Sales and Distribution Allocation previously determined and agreed by the JPT." (Agreement, Schedule F (emphasis added)). Thus, Plaintiffs cannot demonstrate that USWM has breached its "Commercial Efforts obligations" under the Agreement—an element Plaintiffs agree they must plead (Response at 9-10)—without factual information showing that the Safe Harbor is inapplicable. *See*, *e.g.*, *Prewett Enters., Inc. v. Grand Trunk W. R.R. Co.*, 2019 WL 6310495, at *1, 6-8 (N.D. Ill. Nov. 25, 2019) (dismissing amended claim because contract "include[d] multiple contractual provisions allowing parties to the contract to withhold payment without being in breach" and plaintiff failed to heed court's previous warning that "it would behoove the plaintiff to include facts . . . sufficient to plausibly allege that those carve-outs do not apply to the current case").

Keeping with their overall approach, Plaintiffs cite various portions of the Complaint allegedly addressing the Safe Harbor. (Response at 10). But those allegations are unrelated to the Safe Harbor, and, again, forcing the Court to "sift through [a complaint's] pages in search of the nature of the plaintiff's claim" is a non-starter. *Glover*, 698 F.3d at 147.

Putting aside Plaintiffs' belated attempt to recast their Complaint, they cannot overcome the Complaint's silence on the Sales and Distribution Allocation, which is dispositive. To address the Safe Harbor, the Complaint must at the very least allege the Sales and Distribution Allocation's amount. Without that, the Court cannot plausibly infer that USWM failed to "expend[] direct costs . . . in an amount within twenty percent (20%) . . . of the allocation for the Sales and Distribution Allocation . . . ." (Agreement, Schedule F). The Complaint lacks any factual information explaining why the Complaint did not or could not allege this information, especially given that Plaintiffs had representatives on the JPT (*id*. § 4.2.1), the body that controlled the Sales and Distribution Allocation. (*Id*. §§ 4.1.1, 4.2.2). Put simply, Plaintiffs possess or have access to the information necessary to address the Safe Harbor, but they chose to omit it from the Complaint.

Plaintiffs urge the Court to give them a pass because "USWM refused to provide DMK with the very information it now claims that DMK should have pled in the Complaint." (Response at 10). Plaintiffs cite no authority for this argument, and it makes little sense because discovery is permitted on well-pleaded claims, not so a party can search for claims that cannot survive Rule 12 scrutiny. Even if the Court were to give Plaintiffs' the benefit of the doubt with regard to information possessed by USWM, Plaintiffs' failure to address the Sales and Distribution Allocation—<u>information that Plaintiffs possess</u>—is independently fatal to Plaintiffs' claim.

In sum, Plaintiffs cannot plausibly allege the Commercialization Claim without addressing the Safe Harbor, which requires sufficient factual information—including at least the Sales and

Distribution Allocation's amount—from which the Court can infer that USWM failed to spend at least 80% of the JPT-set Sales and Distribution Allocation. Because the Complaint lacks such information, the Commercialization Claim must be dismissed.

#### 3. *The Information Claim Similarly Fails And Must Be Dismissed.*

The Information Claim must be dismissed because the Complaint does not identify the allegedly withheld information giving rise to the alleged breach. (MOL at 11). The Response does not address this point, and so Plaintiffs have waived any counterarguments. *See Kiger*, 2021 WL 5299581, at *2 n.2.

The Information Claim also fails because the Complaint does not plead damages for that claim. (MOL at 12). Plaintiffs cite Paragraphs 42, 43, 44 and 69 of the Complaint to argue that they have alleged "(1) the amount of sales misses for 2022 and 2023, (2) the projected market share ZIMHI should have captured compared to how much it actually captured, and (3) DMK's ultimate bankruptcy all because of USWM's breaches of contract." (Response at 9 n.5). If anything, these allegations relate to the Commercialization Claim. Because the Complaint lacks well-pleaded damages allegations linked to the Information Claim, the claim must be dismissed. *See*, *e.g.*, *Hydrogen Master Rts., Ltd. v. Weston*, 228 F. Supp. 3d 320, 333 (D. Del. 2017) (holding that a contract claim failed because the complaint failed to allege "any facts plausibly showing damages to HMR from the Michigan disclosures") (citation omitted).

### III. ASSUMING *ARGUENDO* ANY CLAIM SURVIVES DISMISSAL, PLAINTIFFS' DAMAGES CLAIMS MUST BE TRIMMED.

Even if Count I survives, the Court should dismiss claims for damages that Plaintiffs cannot recover. (MOL at 15-17). To level set, the Complaint seeks lost profits, lost sales, and "lost market capitalization" damages. (Complaint at 14). USWM is <u>not</u> asking the Court to dismiss lost profits damages – while USWM disputes that Plaintiffs can recover any damages, USWM does not argue

that such damages are barred by the Agreement. On the other hand, the following damages are not recoverable and must be dismissed: (1) lost sales damages exceeding $20 million (MOL at 15-16); and (2) all "lost market capitalization" damages. (*Id*. at 16-17). Plaintiffs' three counterarguments all fail.

First, the Response misunderstands USWM's position, characterizing it as limiting what Plaintiffs are entitled to under the Agreement to a "maximum payment for the entire ten-year term of the Agreement [of] $20 million." (Response at 11). That is not USWM's position. Rather, USWM agrees with Plaintiffs that the Agreement generally: (1) "called for a 50/50 split of profits"; and (2) "called for USWM to make multiple one-time Milestone Payments to [Plaintiffs] of up to $20 million . . . ." (Response at 11-12).[6]

But those "Milestone Payments" were the only compensation Plaintiffs were entitled to under the Agreement in connection with ***sales***. (MOL at 16). Thus, any damages pegged to lost or missed ***sales*** cannot exceed $20 million. (*Id*.). Plaintiffs did not address this argument and have waived any counterarguments. *See Kiger*, 2021 WL 5299581, at *2 n.2.

Second, Plaintiffs argue that the Court cannot find on the pleadings that lost sales or lost profits are consequential damages prohibited by Section 8.6 of the Agreement. (Response at 12). Here again, Plaintiffs misread USWM's position. USWM is not arguing that claims for lost profits should be dismissed (*see* MOL at 16 n.12) or that lost sales are barred by Section 8.6. (*Id*. at 16). Rather, the "lost market capitalization" damages—which the Response does not specifically address—are the consequential damages that Section 8.6 forbids. (*Id*. at 16-17).

[6] For clarity, the Agreement states that "[f]or the avoidance of doubt, the cumulative Commercial Milestone Payments shall not exceed a total of US$ twenty million ($20,000,000)." (Agreement, Schedule C).

Third, Plaintiffs argue that the Court cannot distinguish between consequential and direct damages at the pleading stage. (Response at 12). Plaintiffs are mistaken. *See*, *e.g.*, *Citisteel USA, Inc. v. Gen. Elec. Co.*, 78 F. App'x 832, 835 n.4 (3d Cir. 2003) (affirming decision granting Rule 12(c) motion that "CitiSteel should be barred 'from recovering consequential damages'" even though the "complaint never use[d] the term 'consequential damages'" but sought "damages due, in part, to a reduction of production capacity, depletion of steel supply and inability to fulfill contracts, all of which flow consequently from the contractual violation CitiSteel alleges").

The cases Plaintiffs cite change nothing. In *Cilag GmbH International v. Hospira Worldwide, LLC*, the court recommended against dismissing a claim for lost profits, which "may be classified as either direct or consequential damages, depending on the factual situation." 2022 WL 17475481, at *3-5 (D. Del. Dec. 6, 2022) (quotations omitted). And in *CrewFacilities.com, LLC v. HotelEngine, Inc.*, the court found on the pleadings that the plaintiff had "alleged direct damages" rather than "indirect damages," which were barred by a liability limitation clause. 2021 WL 2649758, at *3 (D. Del. June 28, 2021). These cases are inapt. Unlike in *Cilag*, USWM is not seeking to dismiss claims for lost profits. And like in *CrewFacilities.com*, the Court can determine at this stage that the "lost market capitalization" damages are consequential damages that Plaintiffs waived under Section 8.6.

## CONCLUSION

For the reasons above and in the MOL, the Court should grant USWM's Motion and dismiss Counts I and II with prejudice. Or, if any substantive claims survive, the Court should limit Plaintiffs' claims for damages consistent with the parties' Agreement.

Dated: October 22, 2024

McCARTER & ENGLISH, LLP

/s/ *Daniel M. Silver*

Daniel M. Silver (#4758)
Kate Roggio Buck (#5140)
Benjamin A. Smyth (#5528)
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, Delaware 19801
Tel.: (302) 984-6300
dsilver@mccarter.com
kbuck@mccarter.com
bsmyth@mccarter.com

*Counsel for Defendant USWM, LLC*